## Wertz Estate (No. 2)

*Markowitz & Liverant* and *John T. Logan,* for petitioner.

*Stock & Leader,* for respondent.

GROSS, P. J., August 17, 1955.—On January 18, 1954, Earl Leroy Wertz, Donald H. Baldwin, and Elmer G. Armicost, residents of the County of York, were fatally injured in a motor vehicle collision on a public highway located in the said County of York.

On February 13, 1954, upon the renunciation and nomination of the widow of each decedent, the Register of Wills of the County of York granted letters of administration on each estate to Marvin K. Wertz, a resident of the State of Maryland.

In September 1954, the administrator entered three civil actions in the United States District Court for the Middle District of Pennsylvania, against one Morgan G. Hively, a resident of the County of York, claiming damages under the Wrongful Death Statute and the Survival Statute for the death of each decedent alleged to have been caused by the negligent operation of said defendant's motor vehicle at the time of said collision.

Subsequently, by a proceeding instituted by said Hively, Clarence E. Wolf, also a resident of the said County of York, was made an additional defendant in said civil actions.

On October 26, 1954, Wolf filed his petition before the register of wills in each estate to revoke the letters of administration granted to Marvin K. Wertz.

On December 24, 1954, the register filed his opinion refusing to revoke the letters, from which decision an

appeal was taken by Wolf to this court on April 6, 1955.

On April 30, 1955, Wolf, alone, filed his petition for a citation directing said administrator to show cause why an order should not be issued against him, restraining him from further prosecuting the cases in the Federal court until the proceeding to revoke the letters of administration has been "finally disposed of". It is not clear as to what the petitioner means by "finally disposed of", but as far as this court is concerned, the proceedings to revoke the letters was "finally disposed of" by this court in an opinion and decree filed on July 29, 1955, in which the decision of the register of wills was affirmed and the appeal dismissed at the cost of the appellant.

Of course, if Wolf is a party in interest (which we held in our opinion filed on July 29, 1955, that he is not), he may have the right to appeal to a higher court and, by so doing, if an appeal were to be made a supersedeas, he might succeed in delaying the final determination of the civil actions pending in the Federal court for a long period of time.

Undue delays in the trial of cases should never be encouraged, and should always be avoided whenever possible to do so without infringing upon the rights of the litigants.

As authority for the petitioner's request for this restraining order, he points to section 301(6) of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.301(6), as amended, relating to the exclusive jurisdiction of the orphans' court which, dropping inapplicable parts, reads as follows:

"Fiduciaries. The appointment, control . . . removal and discharge of . . . all fiduciaries of estates and trusts of which the court has jurisdiction, . . ."

He also points to section 304 of the same act relat-

ing to incidental powers of the court, which reads as follows:

"Incidental Powers.—The orphans' court shall have all legal and equitable powers required for or incidental to the exercise of its jurisdiction."

We do not see that either of the above quoted sections of the Orphans' Court Act has any application to this proceeding. Under its broad and comprehensive powers, this court can at all times make the necessary orders requiring a fiduciary to use common prudence and common skill in the administration of an estate; but here there is nothing to indicate that this administrator has failed to do his duty, or performed his duty in an improper manner. The orphans' court has no jurisdiction or power whatsoever with respect to the conduct of the actions in the Federal court. By virtue of the diversity of citizenship created through the nonresidence of the administrator, jurisdiction was conferred upon the Federal court; and, in an opinion filed by Judge Follmer, United States District Judge, on April 15, 1955, the Federal court refused to dismiss the civil actions and also refused to inquire into the motive back of the granting of the letters of administration in these estates.

The civil actions in the Federal court are clearly actions in personam and do not in any way affect the possession of and control over the res by the orphans' court, and will leave undisturbed the orderly administration of these estates in the Orphans' Court of the County of York: Wormley Estate, 67 D. & C., 616, and cases therein cited.

A decree of the Federal court approving an agreement of settlement and compromise of a death action pending therein, apportionment of the proceeds and allowance of counsel fees is, under the Pennsylvania Act of July 28, 1953, P. L. 659, conclusive and binding on the orphans' court having jurisdiction of decedent's

estate: Trigg Estate, 86 D. & C. 76. See also Pantazis v. Fidelity and Deposit Company of Maryland, 369 Pa. 221, where the Supreme Court reversed an order of the Orphans' Court of Northampton County, restraining temporarily the prosecution of a pending death action by an administrator in the court of common pleas.

It is averred in paragraph 21 of his petition for the restraining order that, if the cases in the Federal court are forced to trial and, should Wolf subsequently be successful in having the letters of administration revoked, the trials in the Federal court would have been meaningless because of the plaintiff's (the administrator's) lack of authority.

This argument is too tenuous for us to adopt. Section 772 of the Orphans' Court Act of August 10, 1951, P. L. 1163, specifically provides that:

"No appeal from an order or decree of an orphans' court concerning the validity of a will or the right to administer shall suspend the powers or prejudice the acts of a personal representative acting thereunder. . . ."

Section 520 of the Fiduciaries Act of April 18, 1949, P. L. 512, with respect to the effect of revocations of letters, expressly provides as follows:

"No act of administration performed by a personal representative in good faith shall be impeached by the subsequent revocation of his letters or by the subsequent probate of a will, of a later will or of a codicil: Provided, . . ."

Substantially the same legislative provisions are to be found in section 22 of the repealed Orphans' Court Act of June 7, 1917, P. L. 363, and section 21 of the repealed Register of Wills Act of June 7, 1917, P. L. 415. It is therefore clear that, even if the letters of administration granted to this nonresident administrator were to be revoked (which we think they would

not be), his acts in prosecuting the cases in the Federal court would nevertheless be valid and binding and fully protect all of the parties to said actions.

We, therefore, conclude that the petition for the restraining order in each estate must be dismissed and, without filing separate opinions, we will enter like decrees in the Baldwin and Armicost estates.

We enter the following

### Decree

And now, to wit, August 17, 1955, the petition of Clarence E. Wolf, for a restraining order as prayed for in his petition, filed April 30, 1955, is dismissed, and the prayer thereof refused at the cost of the petitioner.